| | |
|---|---|
| 1 | COOLEY LLP |
|   | MICHAEL G. RHODES (SBN 116127) |
| 2 | (rhodesmg@cooley.com) |
|   | 101 California Street, 5th Floor |
| 3 | San Francisco, CA 94111-5800 |
|   | Phone: (415) 693-2000 |
| 4 | Fax: (415) 693-2222 |
| 5 | ANNE H. PECK (SBN 124790) |
|   | (peckah@cooley.com) |
| 6 | JEFFREY T. NORBERG (SBN 215087) |
|   | (jnorberg@cooley.com) |
| 7 | 3175 Hanover Street |
|   | Palo Alto, CA 94304-1130 |
| 8 | Telephone: (650) 843-5000 |
|   | Facsimile: (650) 849-7400 |
| 10 | Attorneys for Plaintiff |
|    | FACEBOOK, INC. |

**ORIGINAL FILED**
OCT 15 2010
Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

ADR
ADR

E-FILING

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

FACEBOOK, INC.,

   Plaintiff,

   v.

THOMAS PEDERSEN, an individual, d/b/a Faceporn.com

   Defendant.

Case No. CV10-4673 JSW

COMPLAINT SEEKING DAMAGES AND INJUNCTIVE RELIEF FOR:

(1) FEDERAL TRADEMARK DILUTION, 15 U.S.C. § 1125;
(2) TRADEMARK DILUTION UNDER CAL. BUS. & PROF. CODE § 14247;
(3) FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125;
(4) FEDERAL TRADEMARK INFRINGEMENT (FACEBOOK), 15 U.S.C. § 1114;
(5) COMMON LAW TRADEMARK INFRINGEMENT;
(6) VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(D)
(7) FEDERAL TRADEMARK INFRINGEMENT (WALL), 15 U.S.C. § 1114;
(8) COMMON LAW TRADEMARK INFRINGEMENT;
(9) COMMON LAW UNFAIR COMPETITION;
(10) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

JURY TRIAL DEMANDED

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK V. FACEPORN
CASE NO.

1.

FACEBOOK, INC.'S COMPLAINT

1.  Defendant has chosen to use the dilutive and confusingly similar FACEPORN trademark to promote its online "adult" networking services on a site that blatantly imitates and trades on the success of the Facebook brand. Defendant's pornographic website misappropriates and tarnishes Facebook's reputation and abuses the trust of users in Facebook. Facebook brings this suit to stop Defendant's diluting and infringing its famous trademark.

## PARTIES

2.  Plaintiff Facebook, Inc. ("Facebook") is a Delaware corporation having its principal place of business at 1601 South California Avenue, Palo Alto, California 94304.

3.  Facebook is informed and believes, and based thereon alleges, that Defendant Thomas Pedersen is an individual residing in Norway, doing business as Faceporn.com.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction of this action under 15 U.S.C. §§ 1119 and 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. This action is filed under the United States Trademark Act of July 5, 1946, as amended, 15 U.S.C. § 1501, *et seq.* (the "Lanham Act").

5.  This Court has personal jurisdiction over Defendant in that Defendant's willful actions herein alleged took place in and/or caused tortious injury to Facebook in this jurisdiction.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, as this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and as Defendant is an alien.

## COMMON ALLEGATIONS

### FACEBOOK'S BUSINESS

7.  Facebook is a preeminent provider of online networking services and is dedicated to helping people share and connect. Through Facebook's website, the Facebook Platform, Social Plugins and other tools, hundreds of millions of Facebook users enjoy personalized and relevant internet experiences. As of the filing of this Complaint, more than 500 million monthly active Facebook users spend more than 700 billion minutes per month on http://www.facebook.com, making the site the second most trafficked website in the United States and worldwide. And more than one million websites have implemented tools that Facebook

makes available to engage users and to make their sites more social and relevant. Through Facebook, users can interact with over 900 million objects (individual and community pages, groups, and events) and 30 billion pieces of content (web links, news stories, blog posts, notes, photo albums, etc.).

8. Facebook has permeated the web and Facebook users are accustomed to seeing and expect to encounter Facebook and its products and services across the world wide web, not just on the Facebook site. Facebook, and its FACEBOOK trademark, are recognized and renowned in the U.S. and internationally.

### THE FAME OF THE FACEBOOK MARKS

9. Since its online networking service was launched in February 2004, Facebook has continuously used the mark FACEBOOK in interstate commerce in the United States in connection with its goods and services. The FACEBOOK mark is highly distinctive with regard to online social networking services.

10. Facebook owns multiple U.S. registrations for the mark FACEBOOK. These registrations cover a wide variety of goods and services, including, but not limited to:

- Online networking services, online chat functions for transmission of messages, user-defined content, and online forums;
- Online journals featuring user-defined content and electronic publishing services; and
- Software to enable uploading, tagging, and sharing of user-defined content or information.

True and correct copies of registrations for the FACEBOOK mark are attached hereto as Exhibit A, and are hereby incorporated by reference as though set forth in full herein.

11. In addition, Facebook has common law rights in the FACEBOOK mark in connection with various other goods and services, including as identified in pending U.S. trademark applications. These applications cover a wide variety of goods and services, including:

- Online computer databases in the fields of classified ads, collegiate life, general interest, classifieds, virtual community, social networking, photo sharing, and transmission of photographic images;
- Customized web pages featuring user-defined information, personal profiles and information; and
- Hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions.

True and correct copies of the U.S. Patent and Trademark Office online status pages for these trademark applications are attached hereto as Exhibit B, and are hereby incorporated by reference as though set forth in full herein.

12. Facebook also owns a number of other pending U.S. applications to register marks that incorporate the FACEBOOK mark, many of which currently are in use in U.S. commerce. All of Facebook's marks that consist of or incorporate the term FACEBOOK will hereafter be referred to as the "FACEBOOK Marks."

13. The Facebook Platform is made available to application developers, enabling them to develop games and other tools for Facebook users. More than one million software developers hailing from over 180 countries have developed applications on Facebook Platform.

14. Facebook has also used Facebook Platform to broaden its reach beyond the Facebook website. Facebook Platform allows third party websites to integrate aspects of the Facebook experience into their sites, and lets Facebook users interact and connect in other places across the web. In turn, these third party websites increase the visibility of Facebook and the FACEBOOK Marks. More than one million third party websites have integrated with Facebook Platform. Two-thirds of comScore's U.S. Top 100 websites and half of comScore's Global Top 100 websites have integrated with Facebook. More than 150 million people engage with Facebook on external websites every month.

15. Facebook has been the subject of thousands of unsolicited stories in television, radio, and print media, highlighting Facebook's innovative and successful efforts in online networking and communities. Facebook has also received numerous awards and recognitions,

including a listing in Nielsen's Top 10 Web Brands (ranking Facebook 4th overall and 1st by hours spent on the site per day) in September 2009; The Webby Award's "People's Voice Winner" for Social Networking in 2007 and 2008; Harvard Business School's "Entrepreneurial Company of the Year" in June 2008; *BusinessWeek*'s "The World's 50 Most Innovative Companies" in 2008; Business Insider's "Most Likely to Change the World" award in 2009; and The Crunchie Award for Best Overall Startup in 2007, 2008 and 2009.

16. As a result of Facebook's widespread use of the FACEBOOK Marks worldwide, its prolific presence on third party websites, the continuous media coverage of Facebook, the high degree of recognition of the FACEBOOK Marks, and the broad base of users that enjoy Facebook's services, among other factors, the FACEBOOK Marks are famous within the meaning of Section 43(c) of the United States Trademark Act, 15 U.S.C. §1125(c).

**DEFENDANT'S FACEPORN WEBSITE**

17. Defendant operates an online networking and community website accessible at www.faceporn.com (the "Faceporn site").

18. Defendant describes the services offered on the Faceporn site as "the number one socializing porn and sex network! We're here to build the best adult community on the internet by combining the best of the rest to make our community become the only one you need!" Defendant uses the FACEPORN mark in connection with offering and/or promoting his networking and pornography services, prominently displaying the FACEPORN mark on every page of his site.

19. Faceporn users can create a profile that includes a picture, personal information about the user, other photographs, videos, and preferences as to specific types of pornography. They can also befriend other users, join groups, upload video and photographs, rate and comment on videos and photographs, and conduct live-chats.

20. Excluding pornographic content, the nature of the underlying services offered on the Faceporn site, under the FACEPORN mark, are very similar to many of the services provided by Facebook. Facebook provides online networking services to create user profiles; upload photos, videos, and other online content; and connect with others with similar interests.

Facebook does not permit the display or posting of any content that contains nudity or is pornographic in nature. Upon accessing the Faceporn site, however, a visitor immediately encounters highly graphic and sexually explicit images.

21. Defendant has blatantly copied the Facebook logo, site and WALL trademark in an effort to capitalize on the fame of the FACEBOOK Marks. The FACEPORN trademark appears in all lower case letters in the upper left corner of the Faceporn site, in a font, position and color strikingly similar to the font, position and color of FACEBOOK logo on the Facebook site. The FACEPORN logo simply inverts the white typeface on blue background of the FACEBOOK logo. The Faceporn site further features a blue band across the top of the site, substantially identical to the recognizable blue band present on every Facebook page. The Faceporn site profile pages also imitate the Facebook profile pages; the profile picture, profile information, search box, navigation tabs, advertisements, and status update box elements are arranged in a similar layout on the page to that of Facebook. Defendant has also misappropriated Facebook's registered WALL trademark, and uses it on the Faceporn site in connection with online messaging and communication services. True and correct copies of screenshots from the Faceporn site and the Facebook site (altered to obscure personally identifying information and pornographic images on the Faceporn site) are attached hereto as Exhibit C, and are hereby incorporated by reference as though set forth in full herein. A true and correct copy of the registration certificate for Facebook's WALL mark is attached hereto as Exhibit D, and is hereby incorporated by reference as though set forth in full herein.

22. Defendant's use of the FACEPORN mark and its copying of the Facebook logo, site and WALL trademark dilutes and is likely to dilute the famous FACEBOOK Marks. Among other things, the Defendant's use of the FACEPORN mark and its copying of the Facebook logo, site and WALL trademark to offer sex related services tarnishes the FACEBOOK Marks.

23. Defendant's FACEPORN mark is also confusingly similar to the FACEBOOK Marks. The FACE prefix of the marks is absolutely identical, and the suffix of both marks consists of a single syllable four letter word. The "porn" suffix of Defendant's mark is highly

descriptive or generic of Defendant's services (i.e., pornography) and thus does little to create a unique commercial impression. All of the foregoing calls to mind Facebook and suggests the operation of a pornographic version of Facebook.

24.     Defendant's blatant misappropriation of Facebook's trademarks harms Facebook's reputation and evidences Defendant's bad faith.

### FIRST CAUSE OF ACTION
### (FEDERAL TRADEMARK DILUTION)

25.     Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth herein.

26.     As a result of the enormous publicity afforded the FACEBOOK Marks, and the strong and loyal base of users that enjoys Facebook's services, the FACEBOOK Marks have a high degree of recognition, are widely recognized by the general public of the United States as a designation of Facebook's services, and are famous.

27.     The FACEBOOK Marks became famous before Defendant adopted the FACEPORN Mark.

28.     Defendant's use of the FACEPORN mark is likely to cause an association between FACEPORN and the FACEBOOK Marks that impairs the distinctiveness of the FACEBOOK Marks and weakens the connection in the public's mind between the FACEBOOK Marks and Facebook's services. The FACEPORN mark is likely to cause dilution by blurring based on a number of relevant considerations, including:

(a)     Defendant's mark is similar to the FACEBOOK Marks in that the Defendant's mark combines the FACE prefix of the FACEBOOK mark with a descriptive term for Defendant's services;

(b)     The FACEBOOK Marks are inherently distinctive;

(c)     Facebook has substantially and exclusively used the FACEBOOK Marks in connection with social networking services;

(d)     The FACEBOOK Marks are widely recognized by the general consuming public;

(e)     Facebook is informed and believes, and based thereon alleges, that Defendant intends to create an association with the FACEBOOK Marks.

29.     Further, Defendant's use of the similar FACEPORN mark in connection with a pornographic web site creates an association between FACEPORN and FACEBOOK that harms and tarnishes the reputation of the FACEBOOK Marks.

30.     Defendant's acts as alleged above, if not enjoined, will continue. Facebook has no adequate remedy at law in that the amount of its damages is difficult to ascertain with specificity.

31.     As a result of Defendant's acts as alleged above, Facebook has incurred damages in an amount to be proven at trial consisting of, among other things, diminution in the value of the goodwill associated with the FACEBOOK Marks.

32.     Defendant's wrongful use of the FACEPORN mark is deliberate, willful, and without any extenuating circumstances, and constitutes a willful intent to trade on Facebook's reputation or to cause dilution of the famous FACEBOOK Marks and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Facebook is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

## SECOND CAUSE OF ACTION
(TRADEMARK DILUTION UNDER CAL. BUS. & PROF. CODE § 14247)

33.     Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth here.

34.     The FACEBOOK Marks are distinctive and famous within the meaning of section 14247 of the California Business and Professions Code.

35.     Defendant's use of the FACEPORN mark began after the FACEBOOK Marks became famous.

36.     Defendant's continued use of the FACEPORN mark is likely to cause injury to Facebook's business reputation and/or the dilution of the distinctive quality of Facebook's famous FACEBOOK Marks, in violation of California Business and Professions Code section 14247.

37. Defendant's acts as alleged above, if not enjoined, will continue. Facebook has no adequate remedy at law in that the amount of its damages is difficult to ascertain with specificity.

### THIRD CAUSE OF ACTION
### (FEDERAL FALSE DESIGNATION OF ORIGIN)

38. Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth herein.

39. In connection with Defendant's services, Defendant has used in commerce and without Facebook's authorization or consent the FACEPORN mark, which is similar to the registered and common law FACEBOOK Marks.

40. Such acts are likely to cause confusion and deception among the public and/or are likely to lead the public to believe that Facebook has authorized, approved or somehow sponsored Defendant's use of the FACEPORN mark in connection with Defendant's services.

41. The aforesaid wrongful acts of Defendant constitutes the use of a false designation of origin and false description or representation, all in violation of 15 U.S.C. § 1125(a).

42. Defendant's false designation of origin and false description through Defendant's use of the FACEPORN mark has caused, and if not enjoined will continue to cause, irreparable and continuing harm to Facebook's marks, business, reputation, and goodwill, for which Facebook has no adequate remedy at law.

43. As a direct and proximate result of Defendant's wrongful use of the FACEPORN Mark, Facebook has been and will continue to be damaged by, without limitation, the diminution in the value of its trademarks, reputation, business and goodwill in an amount to be proven at trial.

44. Defendant's wrongful use of the FACEPORN mark is deliberate, willful, and without any extenuating circumstances, and constitutes a knowing use of Facebook's Marks and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Facebook is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

## FOURTH CAUSE OF ACTION
### (FEDERAL TRADEMARK INFRINGEMENT)

45. Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth herein.

46. The FACEPORN mark is highly similar to the registered FACEBOOK Marks in appearance, sound, and commercial impression.

47. Defendant's underlying services are the same as and/or related to many of Facebook's services, although the content of the sites differ, as Facebook does not permit the posting of pornographic material.

48. Both Facebook and Defendant offer their services through the same channel of trade, i.e., the internet.

49. The instantaneous nature of internet navigation, the speed at which people navigate and are presented with advertisements, images and/or data on the internet, and the speed at which internet users perform transactions on the internet, all tend to increase the risk of confusion or mistake about the source of a product or service.

50. Facebook is informed and believes, and based thereon alleges, that Defendant adopted the FACEPORN mark with knowledge of, and the intent to call to mind, create a likelihood of confusion with regard to, and/or trade off the fame of Facebook and the registered FACEBOOK Marks.

51. Facebook has given notice of its registrations, applications, and claimed trademark rights pursuant to Section 29 of the Lanham Trademark Act, 15 U.S.C. § 1111. Defendant continues to use the FACEPORN mark despite Facebook's express objection thereto.

52. Defendant's continued use of the FACEPORN mark will injure Facebook by causing a likelihood that the public will be confused or mistaken into believing that the goods or services provided by Defendant are endorsed or sponsored by or associated with Facebook.

53. Facebook has no control over the nature and quality of the goods or services offered by Defendant under Defendant's mark, and Facebook's reputation and goodwill will be damaged and the value of Facebook's registered and common law marks jeopardized by

Defendant's continued use of the FACEPORN name and mark. Because of the likelihood of confusion between the parties' marks, any defects, faults, or deleterious aspects found with Defendant's services marketed under the FACEPORN mark would negatively reflect upon and injure the reputation that Facebook has established for the services it offers in connection with the registered FACEBOOK Marks. As such, Defendant is liable to Facebook for infringement of a registered mark under 15 U.S.C. §1114.

54. Defendant's acts as alleged above, if not enjoined, will continue. Facebook has no adequate remedy at law.

55. As a result of Defendant's infringement of Facebook's registered marks, Facebook has incurred damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the marks.

56. Defendant's infringement of Facebook's registered marks is deliberate, willful, and without any extenuating circumstances, and constitutes a knowing use of Facebook's marks and an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117. Facebook is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, and prejudgment interest.

### FIFTH CAUSE OF ACTION
### (COMMON LAW TRADEMARK INFRINGEMENT)

57. Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth herein.

58. Defendant's acts alleged herein and specifically, without limitation, Defendant's use of the FACEPORN mark, infringe Facebook's exclusive trademark rights in the FACEBOOK Marks, in violation of the common law.

59. Defendant's acts as alleged above, if not enjoined, will continue. Facebook has no adequate remedy at law in that the amount of its damages is difficult to ascertain with specificity.

60. As a result of Defendant's acts as alleged above, Facebook has incurred damages in an amount to be proven at trial consisting of, among other things, diminution in the value of the goodwill associated with the FACEBOOK Marks.

### SIXTH CAUSE OF ACTION
### (CYBERSQUATTING)

61. Facebook incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth here.

62. Facebook is informed and believes and thereon alleges that Defendant acquired and subsequently made use of the Faceporn.com domain. True and correct copies of the domain name registration records for Faceporn.com reflecting Defendant's ownership of the domain are attached hereto as Exhibit E, and are hereby incorporated by reference as though set forth in full herein.

63. Facebook is informed and believes and thereon alleges that Facebook began using the distinctive and famous FACEBOOK Marks years prior to Defendant's acquisition of the Faceporn.com domain name. By the time Defendant acquired the Faceporn.com domain name, the FACEBOOK Marks were widely recognized as an indicator of source for Facebook's services, and were famous.

64. Defendant's Faceporn.com domain name is confusingly similar and/or dilutive of the FACEBOOK Marks.

65. Facebook is informed and believes and thereon alleges that Defendant acquired and has used the Faceporn.com domain name with a bad faith intent to profit from the FACEBOOK Marks.

66. Defendant's actions have caused, and continue to cause, great and irreparable injury to Facebook. Unless these acts are restrained by this Court, they will continue, and Facebook will continue to suffer such injury.

67. Facebook is entitled to cancellation of Defendant's Faceporn.com domain name registration or transfer of the domain name to Facebook, along with monetary compensation and statutory penalties pursuant to the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).