1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## NORTHERN DISTRICT OF CALIFORNIA

8

### SAN FRANCISCO DIVISION

9

10  FACEBOOK, INC.,

Case Number 10-cv-04673 JSW

11               Plaintiff,

**REPORT AND
RECOMMENDATION TO DENY
MOTION FOR DEFAULT
JUDGMENT**

12        v.

13  THOMAS PEDERSEN and RETRO INVENT AS,

Re: Docket Nos. 36, 46, 47

14               Defendants.

15
16
17
18    Plaintiff Facebook moves for the entry of default judgment under Federal Rule of Civil

19  Procedure 55(b)(2) against defendants Pedersen and Retro Invent for operating a website in

20  Norway that allegedly dilutes and infringes Facebook's registered marks.  Facebook also requests

21  an award of attorneys' fees and costs, a permanent injunction barring defendants from using

22  Facebook's registered marks, and the transfer of defendants' internet domains to Facebook.

23  Because Facebook has failed to show that defendants, both residents of Norway, purposefully

24  directed their conduct at California, the Court recommends that the District Court deny

25  Facebook's motion and that it dismiss this action for lack of personal jurisdiction.

26                              **I. BACKGROUND**

27    Plaintiff Facebook provides online networking services to more than 500 million monthly

28  users; these services include allowing users to create profiles, upload photos and videos, and

connect with others.  Dkt. No. 7, Am. Compl. ¶¶ 9, 22.  Facebook owns ten trademark registrations and has seventeen pending trademark applications in the United States for the "Facebook" mark.  *Id.*, Ex. A, B.  Additionally, Facebook owns one trademark registration in the United States for the "Wall" mark.  *Id.,* Ex. D.

Defendant Retro Invent is a Norwegian company doing business as www.Faceporn.com ("Faceporn"), a website featuring pornographic content that allows its users to create profiles, join groups, upload photos and video, and conduct live chats.  *Id.* ¶¶ 4, 20-21.  Every page of the Faceporn website contains the "Faceporn" mark.  *Id.* ¶ 20.  Defendant Thomas Pedersen, a resident of Norway, is the principal of Retro Invent.  *Id.* ¶ 4.

Facebook filed an initial complaint against Pedersen on October 15, 2010, alleging that Pedersen's use of the "Faceporn" mark on the Faceporn website dilutes and infringes Facebook's registered marks.  Dkt. No. 1, Initial Compl. ¶ 1.  After Facebook filed the complaint but before it served Pedersen, Pedersen transferred ownership of the Faceporn.com domain to Retro Invent.  Dkt. No. 36, Facebook's Mot. at 4.  Facebook then amended its complaint to name both Pedersen and Retro Invent as defendants.  *Id.* at 4-5.  The amended complaint asserts ten causes of action against defendants: (1) trademark dilution under 15 U.S.C. § 1125; (2) trademark dilution under CAL. BUS. & PROF. CODE § 14247; (3) false designation of origin under 15 U.S.C. § 1125; (4) federal trademark infringement of the "Facebook" mark under 15 U.S.C. § 1114; (5) common law trademark infringement of the "Facebook" mark; (6) a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(D); (7) federal trademark infringement of the "Wall" mark under 15 U.S.C. § 1114; (8) common law trademark infringement of the "Wall" mark; (9) common law unfair competition; and (10) unfair competition under CAL. BUS. & PROF. CODE § 17200.

Facebook served Retro Invent with the summons and amended complaint in Norway on April 4, 2011, in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.  Facebook's Mot. at 2; Norberg Decl., Ex. D.  Facebook also served Pedersen with the summons and amended complaint in Norway in accordance with the Hague Convention on April 29, 2011.  *Id.*  Defendants have not responded to the complaint.  The clerk

1  entered default as to Retro Invent on May 26, 2011, and as to Pedersen on June 1, 2011.  Dkt.

2  Nos. 23, 28, Clerk's Entry of Default.

3       Facebook now moves for the entry of default judgment against defendants, an award of

4  $80,067.42 in attorneys' fees and $13,294.49 in litigation costs, a permanent injunction barring

5  defendants from using Facebook's registered "Facebook" and "Wall" marks, and the transfer of

6  www.faceporn.com, www.faceporn.net, and www.faceporn.org to Facebook.  *Id.* at 1-2, 22.

7  Facebook served notice of its motion for default judgement on defendants.  *Id.* at 2.

8       The Court ordered Facebook to show cause why it should not recommend to the District

9  Court that this action be dismissed for lack of personal jurisdiction.  Dkt. No. 46, Order to Show

10  Cause ("OSC").  In its response to the order to show cause, Facebook argues that the exercise of

11  personal jurisdiction over defendants is proper because defendants "specifically targeted a forum

12  resident for competition."  Dkt. No. 47, Facebook's Resp. to OSC at 1.

13  **II. LEGAL STANDARD**

14       "[D]efault judgments are generally disfavored.  Whenever it is reasonably possible, cases

15  should be decided upon their merits."  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814

16  (9th Cir. 1985).  After the clerk enters a defendant's default, a court must take "the well-pleaded

17  factual allegations" in the complaint "as true."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854

18  (9th Cir. 2007).  However, the "defendant is not held to admit facts that are not well-pleaded or

19  to admit conclusions of law."  *Id.*

20       In determining whether to enter a default judgment, a court "may dismiss an action *sua*

21  *sponte* for lack of personal jurisdiction," because a "judgment entered without personal

22  jurisdiction over the parties is void."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations

23  omitted).  A court, however, must provide to a plaintiff the opportunity to assert facts to establish

24  that the exercise of personal jurisdiction over a nonresident defendant is proper before dismissing

25  an action for lack of personal jurisdiction.  *Id.*

26  **III. DISCUSSION**

27       In determining whether the exercise of personal jurisdiction over a nonresident defendant

28  is proper, a district court must apply the law of the state in which it sits when there is no

1   applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141

2   F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction

3   over a nonresident defendant to the extent permitted by the Due Process Clause of the

4   Constitution. CAL. CODE CIV. P. § 410.10. The Due Process Clause requires that the defendant

5   have "certain minimum contacts" with the forum "such that the maintenance of the suit does not

6   offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of*

7   *Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). The

8   party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists. *Flynt*

9   *Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Personal jurisdiction may be

10  founded on either general jurisdiction or specific jurisdiction.

11  **A.      General Jurisdiction**

12          General jurisdiction exists when a nonresident defendant is domiciled in the forum state

13  or his activities in the forum are "substantial" or "continuous and systematic." *Panavision*, 141

14  F.3d at 1320. To determine whether a nonresident defendant's contacts are sufficiently

15  substantial or continuous and systematic, a court must consider their "longevity, continuity,

16  volume, economic impact, physical presence, and integration into the state's regulatory or

17  economic markets." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir.

18  2011) (citations and internal quotation marks omitted).

19          Here, Facebook does not argue that the Court has general personal jurisdiction over

20  defendants and alleges no facts to establish that defendants' contacts with California are

21  substantial or continuous and systematic. Facebook alleges only that Pedersen is an individual

22  residing in Norway doing business as Faceporn.com, that Retro Invent is a private limited

23  company residing in Norway doing business as Faceporn.com, and that defendants aimed their

24  tortious conduct at Facebook by registering a ".com" domain name. Am. Compl. ¶¶ 3, 4;

25  Facebook's Mot. at 18. These allegations alone are insufficient to establish that general personal

26  jurisdiction over defendants exists.

27  **B.      Specific Jurisdiction**

28          When the nonresident defendant's contacts with the forum are insufficiently pervasive to

1    subject him to general personal jurisdiction, the court must ask whether the "nature and quality"

2    of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc, Inc.*

3    *v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). A court may exercise specific

4    personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully

5    directs his activities at the forum or performs some act by which he purposefully avails himself

6    of the privilege of conducting activities in the forum, thereby invoking the benefits and

7    protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the

8    nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is

9    reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The

10   plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to

11   establish either of them, specific personal jurisdiction over the nonresident defendant is

12   improper. *Id.* (citations omitted). If the plaintiff satisfies the first two elements, the burden then

13   shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not

14   be reasonable. *Id.* (citations and internal quotation marks omitted).

15          Here, Facebook alleges that personal jurisdiction over defendants is founded on specific

16   jurisdiction. Facebook's Mot. at 16. As will be shown below, however, the exercise of specific

17   personal jurisdiction over defendants is unjustified, as Facebook has failed to satisfy the first

18   element of the Ninth Circuit's test for specific personal jurisdiction. That is, Facebook has failed

19   to show that defendants purposefully directed their activities at California.

20          **1.     Purposeful Direction under *Calder***

21          To satisfy the purposeful-direction element in cases in which tortious conduct is alleged

22   by the plaintiff, the Ninth Circuit requires that the actions of the nonresident defendant be

23   purposefully directed at the forum based on an "effects test that focuses on the forum in which

24   the defendant's actions were felt, whether or not the actions occurred within the forum." *Mavrix*

25   *Photo*, 647 F.3d at 1228 (9th Cir. 2011) (citations and internal quotation marks omitted). This

26   "effects test," which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783

27   (1984), requires that the nonresident defendant (1) commit an intentional act, (2) that was

28   expressly aimed at the forum state, and (3) that caused harm that the nonresident defendant knew

would likely be suffered in the forum state.  *Id.*  Unless the plaintiff establishes all three of the *Calder* elements, the purposeful-direction element is unsatisfied.

Here, Facebook alleges purposeful direction under the *Calder* effects test.  Facebook's Resp. to OSC at 2.  The Court finds that the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because Facebook alleges trademark dilution and infringement, both of which are tort-like causes of action.  *See Panavision*, 141 F.3d at 1321 (finding that a case in which the plaintiff alleges trademark infringement and dilution is "akin to a tort case").  Facebook, however, has failed to establish the second of the *Calder* elements, and therefore, the purposeful-direction element is unsatisfied here.

### a.    Intentional Act

The Court finds that the first element of the *Calder* effects test is satisfied here, because defendants acted intentionally in registering the internet domains www.faceporn.com, www.faceporn.net, and www.faceporn.org and in operating the Faceporn website through those domains, the contents of which allegedly infringe Facebook's registered marks.  Am. Compl. ¶ 64; Facebook's Mot. at 22.

### b.    Express Aiming

The Court is unconvinced that defendants' conduct meets the second element of the *Calder* effects test, which requires a showing that defendants' acts were expressly aimed at California.

To find that a nonresident defendant expressly aimed his conduct at the forum, the Ninth Circuit requires "something more" than "simply registering someone else's trademark as a domain name and posting a web site on the Internet."  *Panavision*, 141 F.3d at 1322.  The "something more" that the Ninth Circuit requires is "conduct directly targeting the forum," such as running a website that appeals to, *and profits from*, an audience in the forum.  *Mavrix Photo*, 647 F.3d at 1229-30 (finding that when the nonresident defendant purposefully operated a website whose content infringed the plaintiff's copyrights, the "something more" requirement was met because the website contained advertisements directed specifically at the forum and the

1  forum's audience was an "integral component" of the defendant's "business model" and

2  "profitability"); *see also Panavision*, 141 F.3d at 1322 (finding that when the nonresident

3  defendant purposefully registered the plaintiff's trademarks as his domain names, the "something

4  more" requirement was met because the purpose of the defendant's conduct was to extort money

5  from the plaintiff); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)

6  (finding that when the nonresident defendant purposefully operated a website whose content

7  infringed the plaintiff's trademarks, the "something more" requirement was met because the

8  defendant ran a for-profit marketing campaign in the forum).

9       In the order to show cause the Court issued to Facebook, the Court noted that Facebook's

10  factual allegations until that point did not meet the "something more" requirement because they

11  did not establish that Faceporn's users in California were an integral component of Faceporn's

12  *business model and profitability*. OSC at 3 (emphasis added). Facebook has failed to cure this

13  deficiency, because in its response to the order to show cause, Facebook does not provide any

14  additional factual allegations with respect to Faceporn's users in California or Faceporn's

15  business model.

16       Instead, Facebook argues that defendants' conduct satisfies the express-aiming element of

17  the *Calder* effects test because defendants "intended to target Facebook" by "offering a

18  pornographic version of Facebook" and by "competing with Facebook." Facebook's Resp. to

19  OSC at 2-3. Specifically, Facebook claims that defendants "copied elements of the Facebook site

20  to make the Faceporn site both visually and functionally similar to Facebook," used "a similar

21  layout and color scheme to that of Facebook," and used "Facebook's wall trademark in the same

22  manner it was used by Facebook." *Id.* at 2. Facebook relies primarily on three cases to support

23  this argument: *Brayton Purcell*, *Bear Mill*, and *Nissan*. *Id.* at 2-3. Facebook claims that these

24  cases hold that a plaintiff can establish that a nonresident defendant expressly aimed his conduct

25  at the forum by illegally copying elements of the plaintiff's website for the purpose of competing

26  with the plaintiff. The Court, however, finds that these cases are inapplicable to the facts here

27  and therefore do not lend support to the exercise of specific personal jurisdiction over

28  defendants.

1    The first case relied upon by Facebook is *Brayton Purcell LLP v. Recordon & Recordon*,

2    606 F.3d 1124 (9th Cir. 2010).  Brayton Purcell, a law firm specializing in elder law in Northern

3    California, brought a suit for copyright infringement against Recordon, a law firm in Southern

4    California, for allegedly posting on its website content on elder abuse law that was posted on

5    Brayton Purcell's website and was copyrighted by Brayton Purcell.  606 F.3d at 1126-27.  The

6    Ninth Circuit found that Recordon's conduct met the express-aiming element of the *Calder*

7    effects test because Recordon, the nonresident defendant, "individually targeted" Brayton Purcell

8    and "entered direct competition with Brayton Purcell" by making "commercial use of Brayton

9    Purcell's copyrighted material for the purpose of competing with Brayton Purcell for elder abuse

10   clients."  *Id.* at 1130, 1132.

11   *Brayton Purcell* is distinguishable from this case in one key respect.  In *Brayton Purcell*,

12   the Ninth Circuit found that the defendant individually targeted the plaintiff, and therefore the

13   forum, because the parties were "in direct competition for elder abuse clients," meaning that both

14   parties sought the business of the same set of potential customers.  *Id.* at 1130.  Here, it is

15   unlikely that a substantial overlap exists in terms of the users sought by Facebook and Faceporn.

16   Facebook admits that defendants present Faceporn "as a social networking site *for those with a*

17   *specific interest in pornographic content*," but it adds that Faceporn also "offers social

18   networking services and functionality similar to that provided by Facebook."  Facebook's Resp.

19   to OSC at 4 (emphasis added).  Despite the alleged similarities between Facebook and Faceporn,

20   the Court finds as untenable the notion that Facebook, a "provider of online networking services"

21   to hundreds of millions of users around the world, competes for exactly the same users as

22   Faceporn, which, according to Facebook's complaint, features "highly graphic and sexually

23   explicit images" and describes itself as "the number one socializing porn and sex network!"  Am.

24   Compl. ¶¶ 9, 20, 22.  This lack of direct competition for the same set of potential users is what

25   prevents Facebook from convincingly establishing that defendants individually targeted

26   Facebook's business and thus expressly aimed their conduct at California under *Brayton Purcell*.

27   The second case is *Bear Mill, Inc. v. Teddy Mountain, Inc.*, No. 2:07-cv-492, 2008 WL

28   2323483 (D. Idaho May 7, 2008).  The Bear Mill, a seller of stuffed animals in Idaho, brought an

action for trademark infringement against Teddy Mountain, a seller of stuffed animals in Canada, for allegedly making unauthorized references on its website to various products and designs trademarked by The Bear Mill. *Id.* at *1. The court found that Teddy Mountain, the nonresident defendant, had expressly aimed its conduct at the forum because it was "undisputed that [the parties] are competitors" and because Teddy Mountain had "actual knowledge" that The Bear Mill's principal place of business was in Idaho, the forum. *Id.* at *6.

*Bear Mill* is inapposite to this case for the same reasons *Brayton Purcell* is inapposite to this case. Here, it is not "undisputed" that Facebook and Faceporn are direct competitors, as there is no record that their users are likely to overlap in the same way that the stuffed-animal-seeking potential customers of Bear Mill and Teddy Mountain would overlap. Accordingly, the Court is unconvinced that this case lends support to Facebook's argument that defendants' conduct meets the express-aiming element of the *Calder* effects test, even when assuming that defendants knew that Facebook's principal place of business was in California. *See* Facebook's Resp. to OSC at 4 ("defendants knew Facebook was a U.S. and California company").

The third case is *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154 (C.D. Cal. 2000). Nissan Motor, a Japanese automaker with a subsidiary located in California, brought an action for trademark infringement against Nissan Computer, a seller of computers in North Carolina, for allegedly registering nissan.com and nissan.net and posting car-related content on those sites, including advertisements. *Id.* at 1157. The court found that Nissan Computer's conduct was expressly aimed at the forum because Nissan Computer, the nonresident defendant, "intentionally" posted car-related advertisements on its website to "profit[] from consumer confusion" at Nissan Motor's expense by diverting Nissan Motor's "potential customers." *Id.* at 1160.

*Nissan* also is distinguishable from this case, because here, Facebook has not alleged any facts that support the notion that defendants have garnered any revenue from their operation of Faceporn at Facebook's expense or that Faceporn has diverted any of Facebook's potential customers. Instead, Facebook states conclusorily that defendants operate Faceporn "with a bad faith intent to profit" from Facebook's marks, but it alleges no facts to suggest that Faceporn has

profited at all at Facebook's expense.  Am. Compl. ¶ 67.  Similarly, Facebook states conclusorily that Faceporn's operations are "likely" to cause consumer confusion and that elements on Faceporn's website are "confusingly similar" to those on Facebook's website, but it does not put forth factual allegations that suggest that confusion actually has occurred or that any of Facebook's potential customers have been sidetracked to Faceporn's website as a result of defendants' conduct.  Am. Compl. ¶¶ 42, 45.  Accordingly, *Nissan* does not support Facebook's arguments in favor of exercising personal jurisdiction over defendants.

### c.   Harm

The Court finds that the third element of the *Calder* test is met here, because defendants likely knew that any harm suffered by Facebook would be suffered in California, as Facebook's principal place of business is in California.  Am. Compl. ¶ 2.

### 2.   Forum-Related Activities and Reasonableness

Because Facebook has failed to establish the first element of the test for specific personal jurisdiction, the Court need not inquire into whether Facebook has met the second or third elements of that test, which require respectively that the plaintiff's claim arise out of the forum-related activities of the nonresident defendant, and that the exercise of jurisdiction over the nonresident defendant be reasonable.

### IV. CONCLUSION

Because Facebook has failed show that defendants' conduct meets the express-aiming element of the *Calder* effects test, which is required to establish the first element of the Ninth Circuit's test for the exercise of specific personal jurisdiction, the Court lacks personal jurisdiction over defendants.  Accordingly, this Court recommends that the District Court deny Facebook's motion for default judgment and that it dismiss this action for lack of personal jurisdiction.  Facebook may file objections to this report and recommendation under Federal Rule of Civil Procedure 72(b) within fourteen days of the date this order is filed.

IT IS SO ORDERED.

DATED: March 2, 2012

_____
NATHANAEL M. COUSINS
United States Magistrate Judge